UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KATEY LYN HOLLOWAY, | |
| Plaintiff, | |
| v. | Case No. 1:24-CV-437 JD |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION ORDER**

Plaintiff Katey Holloway applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. She also protectively applied for supplemental security income under Title XVI. In both applications, Plaintiff alleged that she became disabled in November 2019, when she was 30 years old. Her claims were rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council later denied her request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

B. **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs

in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C. The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "bilateral carpal tunnel syndrome, status post right carpal tunnel release; focal motor seizure disorder; fibromyalgia; post-traumatic osteoarthritis, left ankle and foot; mitral valve prolapse; attention deficit disorder (ADD); major depressive disorder; and generalized anxiety disorder." (ALJ's Decision, R. at 21.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]" (*id*.), and that the "paragraph C" criteria are not satisfied so as to establish a serious and persistent mental disorder (*id.* at 14).

At the hearing, Plaintiff testified that she cannot work due to the swelling of her left leg and foot, "circulation issues," hand pain, and frequent bathroom use. (R. at 396, 407.) She rated her pain as ranging from 4 to 6 on a 10-point scale. (R. at 398.) She said she can stand for about 20 minutes after which she needs to get off her feet and raise her legs for several hours (R. at 398–99; 403–04.) According to Plaintiff, she spends a typical day in pain. While she can vacuum and do laundry, she finds these activities exhausting. (R. at 405.) Plaintiff likes to draw but she hasn't been able to do that due to her hands cramping up. (R. at 411.) To pour a glass of milk from a gallon jug, Plaintiff needs to use both hands as she has a hard time steadying the container. (R. at 404.) Plaintiff testified that even after the surgery to release her carpal tunnel syndrome, she continues to suffer from weakness and tremors in her right hand. (R. at 405.)

Plaintiff said that if she worked at a job that requires the use of hands for a one-third of the workday, she would be in throbbing pain, suffering tightness and popping. (R. at 407.)

Plaintiff testified that, during the second and third quarters of 2022, she worked at a gas station (Angola OneStop). She was let go, however, "because of [her] unreliability from having too many health issues." (R. at 388.) She missed work one out of every four days. (*Id*.) At the end of 2022, she began working for the Indiana Toll Road and stayed there until the beginning of April 2023. She said that when she worked for the toll road, she would drop money and customers' payment cards. and when she worked at the gas station, she would drop food and cigarette packs. (R. at 408.) At the end of the day, her toes would be swollen. (R. at 409.)

Plaintiff said she takes a muscle relaxer, Keppra for seizures, and Ritalin for ADD. (R. at 401.)

In her decision, the ALJ summarized Plaintiff's testimony generally, noting only that she claimed that her "physical impairments, including chronic pain caused limitations in the ability to perform activities of daily living and caused her to not be able to fully function independently." (ALJ's Decision, R. at 24.) The ALJ also noted that Plaintiff "testified that mental impairments cause further limitations in activities of daily living." (*Id*.)

Citing to the medical record, the ALJ noted that Plaintiff worked at a gas station for 40 hours per week, in August 2022, reporting to a medical provider around that time "that pain in her ankles and hands make it difficult to work, but she continued while taking ibuprofen, Tylenol, [and] Flexeril," and "that she was still having some residual right base of the thumb pain, despite carpal tunnel surgery." (ALJ's Decision, R. at 26–27 (citing R. at 4536).) Likewise, "[i]n February 2023, [Plaintiff] reported working 'a lot of hours,' 40 to 46 hours per week in a tollbooth, from 2:00 p.m. to 11:00 p.m." (ALJ's Decision, R. at 27 (citing R. at 4533).)

5

According to the ALJ, although at times this seemingly met substantial gainful activity levels, out of deference to Plaintiff, the ALJ included this period in considering Plaintiff's allegations of disability. Still, the ALJ found this work activity to suggest "limitations less severe than alleged."[1] (ALJ's Decision, R. at 20–21.)

In determining Plaintiff's residual functional capacity ("RFC"),[2] the ALJ recognized that Plaintiff's medical conditions could reasonably account for the symptoms she described. Even so, she concluded that Plaintiff's statements regarding the severity, persistence, and limiting effects of those symptoms were not fully consistent with the medical and other evidence in the record. (ALJ's Decision, R. at 24–25.)

The ALJ concluded that Plaintiff has the RFC to perform

> light work[3] . . . except [she] can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. [Plaintiff] can frequently balance, stoop, kneel, and crouch. She can occasionally crawl. She is limited to frequent handling on the right. She should avoid concentrated exposure to workplace hazards including unprotected heights, dangerous machinery, and moving mechanical parts. She can carry out detailed but not complex work.

(*Id.*, R. at 24.)

---

[1] The hearing took place on June 27, 2023. (R. at 43.) Although Plaintiff testified that her last day at the toll road was April 2 or 3, when she "got diagnosed with all those heart problems" (R. at 387), in the decision authored on August 11, 2023 (ALJ's Decision, R. at 31), the ALJ referred to Plaintiff's work as "ongoing" (*Id.*, R. at 21). The ALJ also states that Plaintiff "has continued to work." (*Id.*, R. at 20.) To the extent that the ALJ may have believed that Plaintiff continued to work after the beginning of April, she did not cite or supply such evidence.

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: checker (41,000 jobs), routing clerk (43,000 jobs), and sorter (55,000 jobs). The VE also testified that if the hypothetical person's RFC were reduced to "handling to occasional with the right upper extremity," no jobs would exist for such a person. (R. at 419.) Likewise, no jobs would exist for the hypothetical person who would need "to elevate her legs even 30 minutes per day to waist height outside of normal breaks and meal times." Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 31.) As a result, the ALJ found Plaintiff not disabled.

**C. Discussion**

In her appeal, Plaintiff advances more than a dozen arguments for remand scattered throughout her opening brief. Most are undeveloped, spanning only a few lines, lacking citation to authority, and shifting rapidly from topic to topic. But the Court discerns that Plaintiff raises two substantive arguments for remand. First, she argues that the ALJ improperly discounted her subjective allegations of pain by concluding her work history was inconsistent with any disability and by characterizing her treatment as routine and conservative in nature, that is, not the kind of treatment that is consistent with Plaintiff's allegations. Second, Plaintiff contends that the ALJ erred by failing to incorporate all her limitations into the RFC, especially those concerning her upper extremities. According to Plaintiff, the ALJ didn't adequately account for her hand surgeon's opinion and her course of treatment.

The Court only addresses Plaintiff's first argument because it agrees that the ALJ's subjective symptom analysis is flawed, requiring remand.

1. *Subjective Symptom Analysis*

Once an ALJ finds that a claimant has a medically determinable impairment that "could reasonably be expected to produce" the claimant's symptoms, the ALJ "must then evaluate the intensity and persistence" of those symptoms to determine how they limit the claimant's "capacity for work." 20 C.F.R. § 416.929(c)(1). "If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, [an ALJ] will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . ." Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims (Oct. 25, 2017). On the other hand, if the alleged symptom severity is inconsistent with the objective medical evidence and the other evidence of record, the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . ." *Id*. Consistent with 20 C.F.R. § 416.929(c)(1)-(4), an ALJ must consider objective medical evidence as well as factors relating to the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*; *see also* SSR 16-3P, 2017 WL 5180304, at *8.

8

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains her reasoning and it is supported by the record. The Court "will uphold an ALJ's credibility determination unless that determination is 'patently wrong.'" *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (quoting *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012))). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

> Social Security Ruling 16-3p explains factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. 2017 WL 5180304 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. Notably, ALJs "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p, 2017 WL 5180304 at *11. Instead, ALJs should "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id*.

*Wilder*, 22 F.4th at 653–54.

Even though the review is highly deferential, [w]hen an ALJ rejects a claimant's testimony as not credible, they must articulate the reasons for that finding. Failure to do so can result in reversal." *Thorlton v. King*, 127 F.4th 1078, 1082 (7th Cir. 2025). Of course, an ALJ may not cherry-pick evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) ("An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding"). An ALJ need not address every piece of evidence in the record, *see Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), but she may not ignore an entire line of evidence contrary to her ruling. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

Although Plaintiff faces a high burden to show error in the ALJ's subjective symptom analysis, she has met that burden here. According to the ALJ, Plaintiff testified that her "physical impairments, including chronic pain caused limitations in the ability to perform activities of daily living and caused her to not be able to fully function independently." (ALJ's Decision, R. at 24.) Moreover, Plaintiff claimed that "a combinations of the physical and mental impairments resulted in being fully disabled and unable to perform work activity." (*Id*.) Ultimately, the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical and other evidence. Yet missing from the ALJ's decision is any indication explaining which allegations the ALJ considered and why they're inconsistent with the medical and other evidence.[4] What's more, the ALJ's conclusion that Plaintiff's work activity at the gas station and the Indiana Toll Road "suggest limitations less severe than alleged" lacks reasonable explanation.

The Court will start with the ALJ's latter proposition. At step one, the ALJ noted that Plaintiff's work after the alleged onset date did not disqualify her from applying for Social Security benefits during the same period. However, the ALJ also observed that such "ongoing work activity does suggest limitations less severe than alleged. (ALJ's Decision, R. at 21.) According to the ALJ, the explanation for her conclusion was forthcoming in the decision: "as noted fully below" (*id*.). But the decision does not actually explain why the ALJ believed that

---

[4] Problematically, the ALJ states in the same section of the decision that "[a]s for claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not consistent with the objective evidence of record." (ALJ's Decision, R. at 25.) "But as the Seventh Circuit has explained, 'symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." *Slayton v. Colvin*, 629 F. App'x 764, 770 (7th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)). As such, an ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.' *Carradine* [*v. Barnhart*], 360 F.3d 751, 753 (7th Cir. 2004) (citation omitted)." *Nygra v. Saul*, No. 2:20-CV-00146 SLC, 2021 WL 1178720, at *7 (N.D. Ind. Mar. 5, 2021), report and recommendation adopted, No. 2:20-CV-146 RLM, 2021 WL 1178159 (N.D. Ind. Mar. 29, 2021). Even so, given that the Court is remanding this case, it need not separately decide the impact of this statement.

10

Plaintiff's work at the gas station and then at the Indiana Toll Road toward the end of 2022 and the beginning of 2023 established that Plaintiff's limitations aren't as significant as she claims.

Plaintiff testified that she could not continue working those jobs. She said that, at the gas station, where she helped as a cashier and prepared and served food, she would go to work in pain and she would drop food or cigarette packs due to problems with her hands. (R. at 408.) She also said that, at the end of the day, her toes would be swollen (R. at 409), and she would miss work once out of every four days, leading the gas station to see her as unreliable, and she was let go (R. at 388). Similarly, at the toll road, she testified that she would have difficulty holding money, credit cards, and customer passes (R. at 407–408), and her toes would swell after just two hours of work. She spoke to her boss and agreed to resign until her health issues were resolved with the hope of re-applying later for a supervisor position.

While finding Plaintiff's employment to be suggestive that she was exaggerating her symptoms, the ALJ did not actually point to any evidence to the contrary. In fact, the ALJ cites medical reports documenting that Plaintiff was seen for left ankle and left foot pain during this period (July 2022). (ALJ's Decision, R. at 25.) The ALJ noted that Plaintiff told the medical care provider that her pain was worse when she walked "but reported no knee pain, no numbness or tingling distally in the toes. The pain reportedly did not radiate, except for into the foot and ankle." (*Id*.) This appears to be consistent with Plaintiff's testimony in which she complained of being unable to work due to pain in her feet and hands, among other things. The ALJ also noted that, in August 2022, Plaintiff again reported to her doctor that pain in her ankles and hands made it difficult to work, "but she continued while taking ibuprofen, Tylenol, [and] Flexeril." (ALJ's Decision, R. at 26–27.) At the time, "[s]he reported that she was still having some residual right base of the thumb pain, despite carpal tunnel surgery." (ALJ's Decision, R. at 27.)

11

What's more, Dr. Lenor Hirschler, who examined Plaintiff in August 2022, suggested that right wrist pain was "possibly due to overuse now with her new job." Dr. Hirschler told Plaintiff to use a thumb spica splint and prescribed prescription-strength ibuprofen. This evidence tends to corroborate Plaintiff's testimony. Without an additional explanation—the logical bridge—which the ALJ promised at the outset of her analysis, but ultimately did not provide, the Court cannot accept the ALJ's premise that Plaintiff's symptoms are less severe than she claims. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed."). After all, as the Seventh Circuit has explained, "'even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.'" *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014) (quoting *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012). As the case stands, the evidence suggests that Plaintiff worked for a relatively short period of time, struggling with pain along the way, to the point that she was let go from the gas station for failing to meet her employer's attendance standards and resigned from the toll road job before she would suffer the same fate. The Seventh Circuit generally does not penalize efforts to "maintain some minimal level of financial stability," *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013), and if the ALJ is going to use such employment to discredit Plaintiff's symptom allegations, she must do more than assume that Plaintiff's attempt to work by itself undercuts her claim of disability. *See Jennifer S. v. Kijakazi*, No. 3:20-CV-50239, 2022 WL 279554, at *5 (N.D. Ill. Jan. 31, 2022) ("An ALJ's assessment is patently wrong if the decision lacks any explanation or support." (citing *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017)). Without considering Plaintiff's working conditions, her attendance record, her need for breaks, or the challenges she faced while handling items either at the gas

station or the toll road, the ALJ failed to build a logical bridge from the evidence to the conclusion that Plaintiff's symptoms were not as severe as she claimed. *See Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003) ("[T]the fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation."). And to the extent that the ALJ believed that Plaintiff continued to work for months after the beginning of April 2023, that misunderstanding may also have contributed to the error.

The ALJ also failed to consider Plaintiff's allegations about how her symptoms affect her daily activities. While the ALJ touched on Plaintiff's report to a medical examiner that she talks with family members daily, using the telephone, text messages, and social media (ALJ's Decision, R. at 22–23, 28), she did not confront Plaintiff's testimony that she can stand for only 20 minutes after which she must raise her legs for several hours, that vacuuming or doing laundry exhausts her, that she can't draw due to her hands cramping up, or that even after the surgery to release her carpal tunnel syndrome, she continues to suffer from weakness and tremors in her right hand. While the ALJ need not consider every piece of evidence, she cannot ignore an entire line of evidence contrary to her findings. Judges in this district have faulted ALJs who merely "catalogue" the plaintiff's daily activities without discussing which symptoms are inconsistent with such activities, *see Clark v. Saul*, 421 F. Supp. 3d 628, 632 (N.D. Ind. 2019) ("The ALJ here simply catalogued Clark's daily activities, and then summarily concluded that her 'active lifestyle' was inconsistent with a finding of disability."), but the ALJ here did even less than that: she ignored Plaintiff's testimony altogether.

Finally, although "[a]n ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility," *Jennifer S. v. Kijakazi*, No. 3:20-

13

CV-50239, 2022 WL 279554, at *6 (N.D. Ill. Jan. 31, 2022) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)), she cannot make her own inferences about treatment levels without record support, *see Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("Myles next argues that the ALJ diminished the severity of her symptoms by drawing his own, unsupported medical inference as to her treatment. She is correct. The ALJ decided, absent any medical evidence, that Myles's condition was less serious because it was treated only with oral medication and not with insulin therapy."). Here, the ALJ found that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" and found the treatment to be "routine and conservative in nature" because Plaintiff had "no psychiatric hospitalizations, and no history of suicidal or homicidal ideation or attempts." (ALJ's Decision, R. at 28.) But the ALJ did not support her conclusion with any evidence indicating why hospitalization or history of homicidal ideations is necessary for Plaintiff's claims to be trustworthy. "The ALJ cannot discount Plaintiff's allegations based on [her] own perceived need for inpatient treatment." *Jennifer S.*, No. 3:20-CV-50239, 2022 WL 279554, at *7.

The Commissioner makes several well-developed arguments in support of the ALJ's subjective symptom analysis but fails to address the shortcomings identified by the Court. But to a certain extent, consistent with *SEC v. Chenery*, 322 U.S.194 (1947), the Commissioner's hands are tied because he may not supplement the ALJ's reasoning or provide a post hoc rationale for the ALJ's decision. In other words, as with the case of Plaintiff's work attempt or her testimony about the daily activities, because the ALJ gave the issues short shrift, there's not much more that the Commissioner could do. Repeating the ALJ's conclusions does not solve the problem of the absence of a logical bridge. Moreover, since the remainder of the case depends on the ALJ's assessment of Plaintiff's subjective symptom allegations, a redo is necessary. *See Pierce v.*

*Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding.")

For these reasons, the Court finds that remand is needed for the ALJ to re-examine Plaintiff's subjective symptoms. Simply put, the errors here are significant enough that the Court cannot predict with great confidence what the result of the remand will be. *See* Wilder v. Kijakazi, 22 F.4th 644, 654 (7th Cir. 2022) (an error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be").

### E.  Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: January 26, 2026

　　　　　　　　　　　　　　　　　　　/s/ JON E. DEGUILIO
　　　　　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　　　　　United States District Court

15